McNEIL v. BROGAN.

No. 33197. Feb. 1, 1949.

*202 P. 2d 696.*

Kathryn Van Leuven and H. B. King, both of Oklahoma City, for plaintiff in error.

Suits & Fellers, of Oklahoma City, for defendants in error.

GIBSON, J. On June 29, 1946, plaintiff in error, as plaintiff, instituted this action against defendant in error, as defendant, to recover the sum of $7,800 which represented the total of various sums of money alleged to have been paid defendant over a period of years and which, it is averred, defendant is not entitled to retain. The parties will be referred to herein as plaintiff and defendant, respectively.

In 1939, at which time the plaintiff was a married man and living separately and apart from his wife, he entered into an agreement with defendant, a divorcee who was the mother of two children of tender years and residing with her, to become married. And, without having obtained a divorce, plaintiff began to live at the same home as defendant and her children, purchased furniture therefor, and contributed cash for the family support. This situation continued until March 1941, when plaintiff entered the U. S. Military Service. Thereupon he allotted to defendant a portion of his salary which was paid directly to defendant. The initial allotment was $75 per month, and thereafter it was increased to $150 per month.

Plaintiff served in the Pacific area of the War, was taken prisoner at the fall of Bataan and was not released until January 30, 1945, when he was returned to the United States and committed to Borden General Hospital, at Chickasha, Oklahoma. Immediately following plaintiff's return personal contact was had between him and defendant, personal associations resumed on strength of the mutual promises to marry, and further substantial amounts in cash were paid to defendant in contemplation of the early fulfilment of the marriage. Plaintiff's contemplated divorce then became a matter of concern, and friction arose by reason of defendant's unwillingness to recognize as valid a divorce proposed by plaintiff to be obtained in the State of Arkansas. The divorce was awarded by decree of Arkansas court on May 9, 1945. Thereafter, on May 27, 1945, plaintiff married one other than defendant, and on June 2, 1945, defendant married one other than plaintiff.

The substance of plaintiff's petition so far as pertinent is as follows: There is alleged the agreement for marriage, and concerning the relation of the parties thereunder it is alleged:

"That at the time of the entrance upon this contract or agreement be-

tween the parties hereto, both plaintiff and defendant knew and understood and agreed that said contract and agreement was in part for future performance, to wit, that part of the agreement entailing a legal marriage between said parties for the reason that both of them knew and fully understood that the separation of plaintiff from his former wife, altho all marital or conjugal relations were ended between them, had not been culminated by the granting of a divorce decree. That defendant was fully cognizant of those facts and was willing to wait for future performance of the legal marriage between herself and this plaintiff until such time as he had received a decree of divorce . . ."

It is alleged that, relying upon defendant's promise which was renewed and ratified after the divorce was procured, plaintiff furnished defendant the moneys. And it is averred that defendant's promise was not made in good faith but that same and her protestation of love for plaintiff were false and made knowingly and willfully for the purpose of extorting from the plaintiff the moneys by him paid.

In response to a motion plaintiff elected to treat his cause of action as ex delicto and not ex contractu, and defendant filed answer wherein there is a general denial of plaintiff's allegations, and also there are averments that the alleged contract was void by reason of plaintiff's married status at the time of the making thereof and that the Arkansas decree of divorce was void for want of jurisdiction in the court to render it, because plaintiff, at the time of the rendition, was a resident of Oklahoma. Plaintiff's reply contained a general denial and alleged that the validity of the divorce decree could not be collaterally attacked.

At the trial, upon conclusion of the evidence, the court, on his own motion and over the objection of plaintiff, directed a verdict for defendant and awarded judgment for defendant. Therefrom this appeal is taken.

Divers grounds of error are assigned and argued in the briefs. However, we deem it necessary to consider only the error assigned upon the action of the court in directing a verdict for the defendant.

That it is proper for the trial court, upon its own motion, to direct a verdict for defendant where the evidence fails to establish plaintiff's cause of action, was held in Howard Greene Torpedo Co. v. Big Chief Drilling Co., 187 Okla. 321, 102 P. 2d 872. Hence, to support the assignment it must appear that the evidence did establish a right of action in the plaintiff. Plaintiff upon the witness stand admitted that none of the moneys for which recovery is sought was paid to or received by defendant after the divorce was awarded. Such fact renders immaterial the question concerning the Arkansas divorce since it is only plaintiff's marital status prior thereto that is material to the question involved. And, in this situation, it becomes pertinent that the contract between the parties is, as a matter of law, void. The rule in such situation is clearly stated in 8 Am. Jur. 848, §4, as follows:

"Any promise of marriage made by or to a person who, to the knowledge of the parties, has a husband or wife living, is absolutely void in its inception and is ineffectual to give rise to an action, although such a promise is not to be performed until after the death of the promisor's or promisee's husband or wife. Likewise, such a promise is void when made by a married person in expectation of a divorce by force of a pending suit. Such contracts are opposed to morality and public policy. They are in themselves a violation of marital duty, and the persons who make them are morally unfaithful to the marriage tie."

The correctness of the rule and the effect thereof to defeat any right of action of plaintiff if based upon a breach of the contract by defendant is not denied.

In support of the assignment it is urged that plaintiff's right of action is

based upon the fraud and deceit, that the evidence thereon is not undisputed, and therefore, presenting an issue of fact within the province of the jury, it was error of the court to direct the verdict. Such rule is sound only when the alleged fraud is the basis of or material to a legal right in contradistinction to an equitable one. The mere allegation of fraud does not create any issue. These conclusions and the underlying reasons are clearly expressed in Rich v. New York Cent. & H. R. R. Co., 87 N. Y. 382. Therein it was said:

"At the foundation of every tort must lie some violation of a legal duty, and, therefore, some unlawful act or omission (Cooley on Torts, 60). Whatever, or however numerous or formidable, may be the allegations of conspiracy, or malice, of oppression, of vindictive purpose, they are of no avail; they merely heap up epithets, unless the purpose intended, or the means by which it was accomplished are shown to be unlawful. (O'Callaghan v. Cronam, 121 Mass. 114; Mahan v. Brown, 13 Wend. N. Y. 261, 28 Am. Dec. 461.) Unless the contract creates a relation, out of which relation springs a duty, independent of the mere contract obligation, though there may be a breach of the contract, there is no tort, since there is no duty to be violated."

Herein there is no attempt to show any legal duty owing by defendant that was violated. Furthermore, the only duty that is here claimed to have been established by the evidence is of equitable cognizance only and therefore negatives the existence of the ground upon which such error must rest. Gamel v. Hynds, 69 Okla. 204, 171 P. 920.

In support of plaintiff's contention that the right claimed by him was established by the evidence, reliance is placed upon the statement made in the third paragraph of the syllabus in Thomas v. Thomas, 27 Okla. 784, 109 P. 825, as follows:

"Wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, or by concealment of material facts, the same result follows, the person so availing himself of his position will not be permitted to retain any advantage gained, although the transaction could not have been impeached if no such confidential relation had existed. This principle applies to every case where influence is acquired and abused; where confidence is reposed and betrayed."

There is nothing in that case that can be construed to the effect that the doctrine so declared is applicable or controlling in the instant case. The quoted language is a statement of the equitable rule deemed applicable to the facts therein. And the pertinent facts there and the application of the rule is expressed in the fourth paragraph of the syllabus as follows:

"A husband, by reason of the trust, affection, and confidence which he had in his wife, had title to certain real estate placed in her name. He shortly thereafter learned that the wife had prior thereto been guilty of adultery, whereupon they immediately separated and he on this account secured a divorce, and continued in the possession of the property. She thereafter brought suit therefor; he defended on the equitable grounds arising out of her violation of her marriage vows and the conditions under which the gift was made. The trial court found that the wife was not entitled to recover. Held, not error; all reasons and consideration supporting the gift having wholly failed in the adultery of the wife."

It is of the very essence of the rule, and clearly reflected in the opinion, not only that there must exist a confidential or fiduciary relation which affords one the power and means to take undue advantage of another, but that the relation was lawful and the duty breached one capable of lawful performance. Neither of these elements could arise under a contract that was illegal and void from its inception and

thus creating a relation which was of itself unlawful.

Herein the plaintiff, in effect, is invoking the equitable jurisdiction of the court to restore to him the moneys he paid to defendant. It is a maxim that he who would invoke such jurisdiction must come with clean hands. In International Land Co. v. Marshall, 22 Okla. 693, 98 P. 951, we held:

"Equity will refuse to lend its aid in any manner to one seeking its active interposition who has been guilty of any **unlawful** or inequitable conduct in the matter with relation to which he seeks relief."

The applicable rule is clearly stated in Springfield Fire & Marine Ins. Co. v. Hull, 51 Ohio St. 270, 37 N. E. 1116, 25 L. R. A. 37, as follows:

"The rule is, that the court will not assist either party to such a contract to enforce it against the other, or to recover what he has parted with under the contract; and the test in determining when it applies to a plaintiff, is whether his cause of action is founded on, or arises out of the illegal agreement. If the action is of that character, whether it appear from his own stating, or is shown by way of defense, he must fail; otherwise, not."

See, further, 17 C. J. S., Contracts, § 280, and cases there cited.

It follows from what has been said that the evidence failed to establish a right of action in the plaintiff and that the trial court properly directed the verdict for defendant.

In view of the conclusion reached, any consideration of the other assignments is unnecessary.

Judgment affirmed.